UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES D. MAJORS,                              CIV. S-99-0493 MCE PAN

        Petitioner,
                                              DEATH PENALTY CASE
    v.

STEVE ORNOSKI, Acting Warden                  ORDER
of the California State Prison
at San Quentin,

        Respondent.

-o0o-

Petitioner was convicted of killing a methamphetamine dealer (Probst), and Probst's girlfriend (Copeland) and friend (Mungavin) at Probst's house in Fair Oaks in the early hours of January 26, 1989. Petitioner told detectives he had flown from Arizona to Sacramento with Robert Reese January 25 for a drug deal with someone Reese knew. Petitioner's alibi was that Reese had dropped him off at a Denny's restaurant where he waited for 45 minutes when Reese returned acting jumpy and "wired."

Witnesses for the prosecution included drug clients whom Probst had told, earlier in the evening he was killed, that some people were visiting him later from Arizona for a big one-pound meth deal. A witness from Arizona testified Majors and Reese purchased two pairs of gardening gloves before the trip.

Bonnie Starr (aka Hogue), a truck-stop prostitute, testified for the prosecution that petitioner and Reese paid her $500 in the early morning hours of January 26 to share her motel room and they were flashing money, drugs, guns and jewelry. On their behest, Starr booked airline tickets for the men and shipped a box containing a gun via Greyhound, using her identification. Starr testified she saw gloves in the motel room after petitioner left town.

Starr received $2,500 from the Sacramento Bee in March 1989 through the secret witness program after she came forward and provided information to Sheriff's detectives. In May and June 1989, Starr received motel lodging and other living expenses through the district attorney's victim and witness assistance program after a confidential informant reported that petitioner was plotting from jail to harm Starr. At trial, Starr testified consistently with her statements to law enforcement; she had given startlingly different accounts to friends and relatives, viz., that she knew Reese and had been involved in the trip to Probst's house to commit the murders. Reese died before petitioner's trial.

By order dated March 11, 2004, the court granted

petitioner's motion to abey proceedings pending the California Supreme Court's ruling on his 504-page habeas corpus petition.

Thereafter, doubts arose whether, given the long and serious illness of prior counsel, petitioner had been able to develop the case sufficiently to air his claims in state court, so that exhaustion efforts would prove fruitful and meaningful. I indicated I would entertain disputes pertaining to critical factual development for which time was of the essence.

In that vein, petitioner moved October 14, 2005, to obtain subpoenas in three main areas. First, petitioner sought documents to establish jurors Swafford and DiBenedetto misrepresented their criminal records during voir dire. The court granted relief in part, arranging for the production of their rap sheets. The court denied leave to serve subpoenas on law enforcement agencies and the district court upheld that ruling on reconsideration.

The second and third areas pertained to the truthfulness of Starr's trial testimony. Petitioner sought leave to subpoena documents from the victim and witness program that might show Starr received additional money or favors as a witness, and to propound interrogatories to prosecutor O'Mara to elicit similar evidence. In opposing the discovery, respondent submitted O'Mara's declaration denying improprieties in connection with, or consideration exchanged for, Starr's testimony. Leave to propound interrogatories was denied and petitioner did not seek reconsideration in the district court.

Petitioner also sought leave to issue subpoenas to myriad law enforcement agencies to uncover evidence Starr knew Reese before January 26, 1989.  During the hearing on petitioner's motion, petitioner revealed a declaration from Starr's sister, Susan Riley, stating Starr had told Riley in July 2002 that Starr's trial testimony was perjured, that she had "framed" petitioner, and that Starr had driven Reese and another unnamed person to Probst's house where those two men murdered the victims.

In light of the procedural posture of the case and the need for swift action to enable meaningful exhaustion, I ordered that Riley and Starr be examined in court.  I deferred ruling on the requests for supoenas to obtain documents from the victim and witness program and criminal records of Reese and Starr, pending the depositions.  The district court upheld my ruling on reconsideration.

Riley was examined December 13, 2005, and testified consistent with her declaration.  Starr was examined December 14, 2005, and January 11 and 12, 2006.  Starr denied having had such conversation with her sister.  Starr testified, with scant recollection, consistent with her trial testimony and statements to police.  But Starr also testified she has a long history of mental illness and suffered from hallucinations and delusions since age 14.  Starr denied telling prosecutors of her mental illness.

After the depositions, I took steps to ensure the record

4

before the California Supreme Court will include the deposition transcripts and related exhibits and Starr's trial testimony and statements to police.  Petitioner reiterated his pending requests for subpoenas and also asked for subpoenas to document Starr's mental health history.  Respondent objected and requested an opportunity to object in writing.  I said I was disposed to grant the requested discovery but would rule after the parties filed letter briefs stating their positions.

I have received and considered letter briefs submitted January 24, 26 and 27, 2006.

All pending discovery requests are denied.

Concerning Starr's mental health records, her testimony is that she suffers from manic-depression, bi-polar disorder, hallucinations and delusions.  Respondent argues that her medical records would not help resolve the contradiction posed by her sister's testimony, which is that Starr committed calculated perjury, not that her account was based on hallucination or delusion.  But the fact is that Starr's own account of her history of mental illness is too undependable to rely upon; her medical records might confirm her testimony, repudiate it or alter or it in some way that does help resolve the conflicting stories.

As to records from the victim and witness program, the deposition testimony adds nothing to support petitioner's suspicion Starr received secret consideration or payment for her testimony, beyond the payments and expense payments documented in

the district attorney's file.  Petitioner has enough to vet the issue in state court.

With respect to law enforcement records that might show that Starr knew Reese before the night of the murders, petitioner indicated he would be able to present a declaration that Reese was seen in Starr's apartment long before the killing.  That, together with Starr's purported statements to friends and relatives, is sufficient to bolster a request the state court permit further inquiry.

On the other hand, the California Supreme Court may deny further factual development, explaining convincingly why all the evidence petitioner wants is not relevant and why the law may require this court defer to its determination on that issue.

Comity counsels this court involve itself no further in developing the factual record at this point.  However, if relief is denied in the California Supreme Court without a convincing reasoned decision explaining why further factual development is not required, this court will authorize the subpoenas for medical records and for law enforcement records implicating both Reese and Starr, to look for any clue how to resolve what respondent recognizes are irreconcilable accounts and also to assess, if Starr's testimony about her mental health is true, whether a

///
///
///
///

decision to impose the death penalty should be based upon the testimony of such a person.

So ordered.

Dated:  February 7, 2006.

                                                /s/ Peter A. Nowinski
PETER A. NOWINSKI
Magistrate Judge